MATTHEW A. MENSIK, WSBA # 44260
CASEY M. BRUNER, WSBA # 50168
WITHERSPOON KELLEY
422 W. Riverside, Suite 1100
Spokane, WA  99201
Telephone:  509-624-5265
Facsimile:  509-458-2728
Email:  mam@witherspoonkelley.com
        cmb@witherspoonkelley.com

MATTHEW CROTTY, WSBA #39284
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA  99201
Telephone:  509-850-7011
Email:  matt@crottyandson.com

Counsel for Plaintiff

HONORABLE ROSANNA
MALOUF PETERSON

## IN THE U.S. DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WASHINGTON

MARK PETERSON, an individual,

                              Plaintiff,

vs.

CITY OF YAKIMA, a local
governmental entity; TONY
O'ROURKE, an individual human;
MARK SOPTICH, an individual
human, and ANTHONY DOAN, an
individual human,

                              Defendants.

NO.  1:18-CV-03136-RMP

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**Noted:  December 19, 2019**
**With Oral Argument:  1:00 p.m.**
**Location:  Yakima, WA**

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

# I.    INTRODUCTION

The U.S. Constitution assures Plaintiff Mark Peterson's ("Mr. Peterson") right to freedom of speech, freedom of assembly, and freedom to petition the government. U.S. CONST., AMEND. I. Mr. Peterson exercised those rights and the City of Yakima ("the City") retaliated.

Mr. Peterson spoke. Mr. Peterson has publicly opposed many programs, initiatives, and projects that he believed were bad for the City, critically, Mr. Peterson was a leader in a grassroots effort opposing the City's Downtown Master Plan, ("the Plan") which he believed would harm the downtown business district. ECF No. 23 ¶¶ 16 – 68.

Mr. Peterson assembled. Mr. Peterson organized numerous community and business leaders to voice their opposition. *Id.* He arranged meetings, took groups to public events, and was the first of a host of citizens to voice their opposition at City Council meetings on the subject. *Id.*

Mr. Peterson petitioned. Mr. Peterson tenaciously petitioned the government in person, in public meetings, and in written correspondence, expressing his opposition to the fatally flawed Master Plan. *Id.* All of these actions are protected by the First Amendment. In response, the City, and its top officials, began a coordinated, multiagency effort to silence, marginalize, and combat Mr.

WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

Peterson in order to limit his ability to oppose the Master Plan. They (1) removed Mr. Peterson from proposed government committees; (2) investigated him via law enforcement and the fire department; (3) charged him with a crime for which there was no probable cause; (4) demanded he serve jail time without justification; and (5) publicly accused him of committing crimes.

## II.    STATEMENT OF FACTS

Pursuant to LCivR 56, Mr. Peterson has filed a "Statement of Material Facts Not in Dispute." ECF No. 23.  In cases of government misconduct, the Ninth Circuit holds that a finding in favor of the Plaintiff may rest solely on circumstantial evidence. *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013); *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002). Therefore, circumstantial evidence is necessarily included.

## III.    ANALYSIS

### 1. <u>Summary Judgment Standard</u>

"Summary judgment is appropriate if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Goetz v. Life Ins. Co. of N. Am.*, 272 F. Supp. 3d 1225, 1232 (E.D. Wash. 2017) (quoting Fed. R. Civ. P. 56(a)). "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citation omitted).

## 2. <u>First Amendment Retaliation</u>

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

U.S. CONST. AMEND. I. "The First Amendment affords the broadest protection to ... political expression in order 'to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). "Governmental 'action designed to retaliate against and chill political expression strikes at the heart of the First Amendment.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 14 F.3d 457, 464 (9th Cir. 1994). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701, 164 L. Ed. 2d 441 (2006). "Official reprisal for protected



WK WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Id.*

To prove First Amendment retaliation, a plaintiff must prove: (1) the plaintiff was engaged in a constitutionally protected activity; and (2) the defendant's actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity. *Arizona Students*, 824 F.3d at 867. Additionally, a plaintiff must prove causation.  If a plaintiff is alleging retaliatory prosecution, the plaintiff must prove "but for" causation, which includes a requisite showing that there was "no probable cause" to charge the crime. *Hartman,* 547 U.S. at 265. For other retaliatory acts, the plaintiff must prove only that "the protected activity was a substantial motivating factor in the defendant's conduct." *Arizona Students*, 824 F.3d at 867.

### 3. <u>Mr. Peterson Engaged in Protected Activity and Was a Known, Vocal Opponent to the City of Yakima</u>

Mr. Peterson is the owner and manager of H&H Furniture—a locally owned business that has operated in central Washington for over 50 years. ECF No. 23, ¶¶ 1 – 16. It currently occupies two commercial buildings in downtown Yakima. *Id.* As a business and real estate owner in downtown Yakima, Mr. Peterson cares deeply about his City. For decades, he has been known to City officials as an

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5

WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

advocate for and against various City programs and initiatives. ECF No. 23, ¶¶ 16-68. Frequently, however, Mr. Peterson is a vocal critic of proposed government programs that he thought would be detrimental to the City. *Id.*

Most recently, however, Mr. Peterson was a staunch opponent to the Plan. ECF No. 23, ¶¶ 29–68. The centerpiece of the Plan was the creation of a "downtown plaza," which would be built on the parking lot across from the U.S. District Courthouse in Yakima. ECF No. 23, ¶ 38. The Plan was described as a "game changer." ECF No. 23, ¶¶ 37, 38. Many business owners, however, complained about losing parking and the narrowing of roads, which would reduce the number of patrons. *See generally* ECF No. 23, ¶¶ 29–43; 44. The Plan was "pushed" by the then City Manager Tony O'Rourke. ECF No. 23, ¶¶ 40–41. Mr. O'Rourke lobbied the City Council to design, commission, and fund the Plan. ECF No. 23, ¶ 41.

Mr. Peterson was one of the small business owners who would have been negatively impacted by the Plan. ECF No. 23, ¶ 44. He helped to lead a grass-roots opposition to the Plan. ECF No. 23, ¶¶ 44 – 60. Mr. Hawkins, Mr. O'Rourke's hand-picked Economic Development Coordinator, recalls first hearing Mr. Peterson's opposition at a community information meeting. ECF No. 23, ¶ 45. Then, on October 9, 2013, Mr. Peterson helped organize a "Westside Merchant &

WK WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

Business Meeting," to discuss the plaza project. ECF No. 23, ¶ 46. The meeting was going to take place on October 14, 2013, and Mr. Hawkins attended as a city representative. ECF No. 23, ¶¶ 47–48. According to Mr. Hawkins, Mr. Peterson "objected to everything" at the meeting. Mr. Hawkins said he was "embarrassed" by Mr. Peterson's behavior at the meeting. ECF No. 23, ¶¶ 48–49. He testifies that Mr. Peterson was "full of arrogance. He wouldn't shut up." ECF No. 23, ¶ 49. On October 23, 2013, Mr. Peterson sent an email to many business leaders to organize the business community regarding the plaza project. ECF No. 23, ¶ 51. Mr. Peterson wanted to organize a meeting for October 30, 2013. ECF No. 23, ¶¶ 51–52. On October 28, 2013, one of the email recipients sent Mr. Peterson's email to Mr. Hawkins. ECF No. 23, ¶¶ 51–52.

On November 5, 2013, Mr. Peterson and his group of concerned business leaders attended a meeting at a local restaurant. ECF No. 23, ¶ 53. Mr. Hawkins and Mr. O'Rourke attended and saw Mr. Peterson's strong opposition to Mr. O'Rourke's Master Plan. *Id.* That same evening, Mr. Peterson organized a group of citizens to attend and speak at the Yakima City Council meeting in opposition to the Plan. ECF No. 23, ¶ 54. Mr. Peterson was the first to speak in opposition. *Id.*

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

On November 6, 2013, Mr. Peterson again criticized the Plan and organized opposition. ECF No. 23, ¶ 55. Ms. Price warned Mr. Hawkins and Mr. O'Rourke that there would be opposition at the next meeting. ECF No. 23, ¶¶ 55–60.

On November 9, 2013, Mr. Peterson exchanged emails with City staff where he was again critical with the Plan and its implementation. ECF No. 23, ¶¶ 70–73. Mr. Peterson's opposition to the Plan continued until the Plan was ultimately defeated by the voters in 2018.

**4. <u>The City of Yakima Took Actions Against Mr. Peterson</u>**

Before Mr. Peterson was proven right, however, the City engaged in a series of retaliatory actions against Mr. Peterson from 2013 through 2017.

a. <u>The City Removed Mr. Peterson from the Proposed Implementation Committee Because of Mr. Peterson's Advocacy.</u>

The Plan called for an "Implementation Oversight Committee" (not a feasibility or exploratory committee), which was intended to bring a group of council members and "stakeholders" into the process. ECF No. 23, ¶¶ 61–69. It is "guaranteed" that Mr. O'Rourke play an offensive role in determining who was on that committee. ECF No. 23, ¶ 64. According to Mr. Hawkins, Mr. O'Rourke directed Mr. Hawkins to generate a list of potential committee members. ECF No. 23, ¶¶ 65, 67. The list that Mr. Hawkins sent to Mr. O'Rourke included Mr.



WK WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

Peterson. ECF No. 23, ¶ 69. After Mr. Peterson's criticisms, however, Mr. Hawkins sent an email to Mr. O'Rourke stating: "I really suggest that we don't include Mark on the implementation committee." ECF No. 23, ¶¶ 70-77. Ultimately, Mr. O'Rourke removed Mr. Peterson's name from the proposed committee list. ECF No. 23, ¶¶ 70–77. Mr. Hawkins openly admits Mr. Peterson's removal was "Based on some comments that he made." ECF No. 23, ¶¶ 70-77. Unfortunately, this was not the end of the City's retaliation against Mr. Peterson.

      b. <u>The City Attempted to Force Mr. Peterson To Remodel His Business to Install an Unnecessary, Expensive Ceiling, which was not Required Under the Code</u>

From 2003 to 2013, H&H Furniture's downtown buildings received clean fire inspections from all of the City's fire inspectors, including Mary Valladares and Chuck Heath. ECF No. 23, ¶¶ 78–85. On November 5, 2013, however, Mr. Doan arrived for a fire inspection. ECF No. 23, ¶ 91. Mr. Doan was a new, probationary fire inspector who did not have all his certifications. ECF No. 23, ¶¶ 66–90. Mr. Doan "failed" H&H Furniture under a "miscellaneous" violation, without explanation. ECF No. 23, ¶ 101. He wrote only, "recommend walk-through with Deputy Chief to go over fire fighter safety in basement." ECF No. 23, ¶ 101.



422 W. Riverside Avenue, Suite 1100   Phone: 509.**624.5265**
Spokane, Washington 99201-0300   Fax: 509.**458.2728**

On November 19, 2013, Mr. Doan delivered a letter to Mr. Peterson and stated that the promised "walk-through" did not happen. ECF No. 23, ¶ 118–124. Instead, Mr. Doan found a letter from 2002, written by Mary Valladares, that stated Mr. Peterson needed to install a one-hour fire resistant ceiling in the basement. ECF No. 23, ¶¶ 118–124. Mr. Doan ordered the project be completed by January 31, 2014 (just over two months). ECF No. 23, ¶¶ 118–124. Mr. Peterson disagreed telling Mr. Doan that he had ten years of clean inspections and that fire department officials had repeatedly told him that he did not need to do anything and that the building was fine. ECF No. 23, ¶ 124. Mr. Doan did not care and told Mr. Peterson that he had two months to complete the work. ECF No. 23, ¶ 118.

Two days later, Mr. Doan appeared at H&H Furniture for a reinspection. ECF No. 23, ¶ 130. Five days after that, Mr. Doan appeared for a reinspection. ECF No. 23, ¶¶ 131. On January 14, 2014, Mr. Doan appeared for a reinspection. ECF No. 23 ¶ 135. Despite the deadline of January 31, 2014, Mr. Doan stated that the modifications were two months overdue. *Id.* Mr. Peterson again objected that the upgrades were unnecessary or required by law. *Id.*

On January 31, 2014, Mr. Doan appeared for a reinspection. ECF No. 23 ¶ 138 – 142. Mr. Peterson did not meet with or speak to Mr. Doan. *Id.* The staff at

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100     Phone: 509.**624.5265**
Spokane, Washington 99201-0300          Fax: 509.**458.2728**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

H&H Furniture asked Mr. Doan to schedule an appointment for the next week if he wanted to meet with Mr. Peterson. *Id.* No one denied Mr. Doan entry and he did not attempt to look around. *Id.*

      c.  <u>The City of Yakima Criminally Charged Mr. Peterson</u>

On Monday, February 3, 2014, Mr. Doan wrote a summary of the events. ECF No. 23 ¶ 232. He signed it under penalty of perjury on February 4, 2014. ECF No. 23 ¶ 233–234. On February 10, 2014, the City filed criminal charges against Mark Peterson for "denying a fire investigation." ECF No. 23 ¶ 239. The criminal prosecution lasted ten months. *See* ECF No. 353. Just before trial, the City admitted that Mr. Peterson had a "right" to deny access to private areas, therefore, denial *could not result in charges*. ECF No. 23 ¶ 357. Also, there was no "clear" denial and, if there was a denial, the City was required to get a search warrant. *Id.* The City dismissed the claim "in the interest of justice." *Id.*

## 5. <u>The City's Actions Would Chill a Person of Ordinary Firmness from Continuing to Engage in the Protected Activity</u>

The City's actions against Mr. Peterson would chill a person of ordinary firmness from continuing to engage in protected activity. The City tried to force Mr. Peterson to perform a significant and costly renovation. *See* ECF No. 23 ¶¶ 118 – 124. The City gave Mr. Peterson just over two months to complete the

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

upgrade—an impossible task. *Id.* When Mr. Peterson did not complete the task, the City charged him with the crime of denying a fire investigation. *See* ECF No. 23 ¶¶ 231 – 239. The charge was without probable cause. *See* ECF No. 23 ¶¶ 357. After a ten-month prosecution and demanding that Mr. Peterson serve jail time, the City truthfully admitted that it never obtained a warrant and that Mr. Peterson had a "right" to deny the inspection. *Id.* The only question remaining is whether Mr. Peterson's protected activity was a significant factor or a "but for" cause in the City's actions against him. The circumstantial evidence is overwhelming and undeniable in the affirmative.   And the City cannot provide an alternative explanation for its egregious conduct.

**6.  <u>The City's Actions Against Mr. Peterson Were Substantially Motivated By Mr. Peterson's Speech</u>**

The evidence that the City, specifically Mr. O'Rourke, retaliated against Mr. Peterson is overwhelming.   The litany of evidence is set forth in Plaintiff's statement of undisputed facts.   Plaintiff covers the most egregious evidence below.

<u>Timing</u>: The timing surrounding Mr. Peterson's investigation, enforcement, and prosecution is too coincidental to ignore. Mr. Doan appeared November 5, 2013. *See* ECF No. 23 ¶ 95. Shortly after Mr. Peterson's targeted opposition to the

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 12



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100      Phone: 509.**624.5265**
Spokane, Washington 99201-0300      Fax: 509.**458.2728**

City's "Plan" began. *Id.* It was the *same day* that Mr. Peterson confronted Mr. O'Rourke at the breakfast meeting. *See* ECF No. 23 ¶ 53. It was the *same day* that Mr. Peterson brought his group to the City Council meeting. *See* ECF No. 23 ¶ 54. The fact that is was in November is also unusual. As the records show, H&H Furniture's inspections occurred between March 11 and April 9. *See* ECF No. 23 ¶ 78 – 85. As Mr. Caruso stated, historically, a business's fire inspection occurred the same time every year. *See* ECF No. 23 ¶ 388. Mr. Doan's November inspection was an anomaly and the new date is suspect. The timing of other actions is also overtly conspicuous.  November 12, 2013, the day Mr. Peterson was removed from the Implementation Committee because of his speech was the <u>same day</u> that Mr. Kunkler told the fire department to enforce the 2002 letter. *See* ECF No. 23 ¶¶ 109-11, 73-74. This cannot be coincidence.

<u>The Lack of Process and Procedure:</u> In its rush to improperly punish Mr. Peterson, the City abandoned its policy and procedures.

*The City of Yakima Failed to Notify Mr. Peterson of His Appeal Rights:* A citizen, when faced with a fire violation, has a right to appeal that violation of a board of appeals. *See* ECF No. 23 ¶¶ 165 – 170. Mr. Caruso testified that the appeal rights should be given with the code violation notice. *See* ECF No. 23 ¶

**WK WITHERSPOON·KELLEY**
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100     Phone: 509.**624.5265**
Spokane, Washington 99201-0300     Fax: 509.**458.2728**

386. However, despite Mr. Peterson explicitly stating that he was trying to appeal the violation, <u>no one</u> informed Mr. Peterson of his appeal rights.

*The City of Yakima Failed to get a Warrant:* No one obtained a warrant to search H&H Furniture. ECF No. 23 ¶¶ 171-180. Mr. Peterson denies refusing the fire investigation.  However, that was the crime he was charged with. As Ms. Martinez admitted, an administrative warrant was necessary to search private spaces and he had a "right" to refuse a warrantless search. ECF No. 23 ¶ 357. The City officials *knew* that a warrant was needed beforehand and did not get one. ECF No. 23 ¶¶ 171 - 180. All of the officials involved are now blaming each other for that failure.  Mr. Doan blames Mr. Kunkler for telling him *not* to get a warrant. ECF No. 23 ¶ 421. Mr. Soptich states that he told people to get a warrant. ECF No. 23 ¶ 176. Mr. Kunkler blames Mr. Doan for failing to inspect the public spaces. ECF No. 23 ¶ 421. Mr. O'Rourke testifies that he told the fire department to get a warrant. ECF No. 23 ¶¶ 222 - 224.

*The City of Yakima Circumvented the Codes Dept.:* Mr. Caruso, the codes administrator and fire marshal, testified that, if a code violation is found, the investigator attempts to work with the business owner. ECF No. 23 ¶ 380. If the owner refuses or fails to abate the violation, it will be referred to Mr. Caruso for citation and enforcement. ECF No. 23 ¶ 380. Mr. Caruso is the law enforcement



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100     Phone: 509.624.5265
Spokane, Washington 99201-0300     Fax: 509.458.2728

officer in charge of enforcing fire and building code violations. ECF No. 23 ¶¶ 359- 362.  Instead of following the process by referring the case to Mr. Caruso, Mr. O'Rourke instead directed the City Prosecutor to charge Mr. Peterson with a crime. ECF No. 23 ¶ 205. The City never moved to enforce the abatement.  In a rush to punish Mr. Peterson for his speech, the City circumvented the codes enforcement process to charge Mr. Peterson criminally.

The Lack of Analysis or Research: The City demanded that Mr. Peterson install a one-hour fire resistant ceiling in a 100-year-old basement. ECF No. 23 ¶ 118. Before doing so no one did any historical research or analysis as to whether upgrading the ceiling was even required by law. ECF No. 23 ¶¶ 109, 110, 113, 120. When Mr. Doan thought there may be a problem, he asked Soptich, who asked Denman, who found a 2002 letter. ECF No. 23 ¶¶ 105-110. Kunkler directed them to enforce the 2002 letter on the same date Mr. Peterson was removed from the Implementation Committee. No one conducted a code or use history of the building to determine whether the remodel was required by law— they had their excuse.  ECF No. 23 ¶¶ 109, 110, 113, 120.

Impossible Demands: The City's demands to Mr. Peterson were impossible to complete.  The City stated that he needed to install a one-hour resistant ceiling. At the time, Mr. Soptich stated that this could be done for $1.00 per square foot

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 15



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100      Phone: 509.**624.5265**
Spokane, Washington 99201-0300          Fax: 509.**458.2728**

and would take less than 90 days. ECF No. 23 ¶¶ 218 - 219. There is no basis in fact for these assertions. *Id.* In reality, the project would cost approximately $250,000.00 and take at least seven months. ECF No. 23 ¶ 220. It was a setup, so that when Mr. Doan appeared for the reinspection, either Mr. Peterson would be shut down for code violations or charged with denying a fire inspection.

<u>Unprecedented Involvement By Mr. O'Rourke:</u> The most salient evidence proving that Mr. O'Rourke pushed Mr. Peterson's prosecution is his personal, unprecedented involvement in the case. ECF No. 23 ¶¶ 277 – 340. Mr. O'Rourke is documented as retaliating against Mr. Peterson as early as mid-November when he removed Mr. Peterson from the Implementation Committee. Mr. O'Rourke's involvement in the criminal prosecution began as early as January 16, 2014, when he fabricated the fire department letter to provide himself cover for his retaliation. ECF No. 23 ¶¶ 207 - 216.

Mr. O'Rourke was active in planning and directing the code officers in their duties *before any alleged crime had been committed.* ECF No. 23 ¶¶ 195 – 200. On January 29, 2014, a "Senior Staff Meeting" was held at the City Manager's Office to discuss the upcoming inspection of H&H Furniture. ECF No. 23 ¶¶ 195 – 200. Ms. Cally Price took notes for Mr. O'Rourke and wrote: "according to legal, a warrant is not needed to go in H&H Furniture for the re-inspection



(scheduled 1/31)... Fire will work with legal and codes." ECF No. 23 ¶¶ 195 – 200. Mr. Sean Hawkins, the City's Economic Development Director, recalls hearing about Mark Peterson at a senior staff meeting. ECF No. 23 ¶¶ 203. Cynthia Martinez first heard the Mark Peterson case at a senior staff meeting. ECF No. 23 ¶¶ 204.

On February 2, 2014, a councilmember emailed Mr. O'Rourke to inquire about the H&H Furniture situation. ECF No. 23 ¶¶ 298.  Ms. Price coordinated with department heads to organize a response to the councilmember.  Mr. O'Rourke, however, told her that this is "not something a C member should be involved in while it is still active." On February 6, 2014, four days prior to the filing of criminal charges, Jeff Cutter sent Mr. O'Rourke and Ms. Price an email subject line "H&H Furniture." ECF No. 23 ¶¶ 308 - 311. Mr. O'Rourke responds with a one-line email. It states: "Thanks." ECF No. 23 ¶¶ 308 – 311. And the rest of the email is redacted. Mr. Cutter responded with another lengthy email to Mr. O'Rourke only. ECF No. 23 ¶¶ 308 – 311. That email is redacted. That same day, Mr. Cutter sent the entire email chain for that day to Cynthia Martinez and stated: "Cynthia, FYI. We can discuss on Monday perhaps. JC." "Monday," referred to Monday, February 10, 2014, which is the day Mr. Peterson was charged with a crime. ECF No. 23 ¶¶ 308 – 311.

WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

On Monday, February 10, 2014, Cynthia Martinez wrote an email to Defendant Tony O'Rourke, Jeff Cutter, and Joe Caruso, with the subject line "City v. Mark Peterson." ECF No. 23 ¶¶ 312. In the email, Ms. Martinez wrote: "Update. I have prepared the complaint and will file it with the court when their window opens in the afternoon." ECF No. 23 ¶¶ 312. Defendant Tony O'Rourke responded 12 minutes later with the following: "Great." ECF No. 23 ¶¶ 312.

Mr. O'Rourke's involvement is pervasive and unprecedented. The City Attorney, Jeff Cutter, asked Cynthia Martinez to send Defendant Tony O'Rourke an "update" on the criminal prosecution against Mark Peterson. ECF No. 23 ¶¶ 355. Cynthia Martinez stated that Defendant Tony O'Rourke "appeared to have an interest in the case" against Mark Peterson. ECF No. 23 ¶¶ 355-358. Cynthia Martinez testified that "Mr. O'Rourke would ask about the case…and I would give him an update." ECF No. 23 ¶¶ 355-358. Cynthia Martinez understood that Defendant Tony O'Rourke wanted an "update" because "Mr. O'Rourke was interested in the matter." ECF No. 23 ¶¶ 355-358. Ms. Martinez cannot think of any other instance in which she sent Mr. O'Rourke an update on a case. Mr. O'Rourke would not ask about any other cases. ECF No. 23 ¶¶ 355-358.

Mr. O'Rourke may have even engaged in prosecutorial misconduct by attempting to contact the judge that presided over Mr. Peterson's hearing. ECF No.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

23 ¶¶ 288 - 290. On April 7, 2014, Cally Price, assistant to the City Manager,

Defendant Tony O'Rourke, emailed City Prosecutor, Cynthia Martinez. ECF No.

23 ¶¶ 288 - 290. The email subject was "Mark Peterson," and Ms. Price asked the

following question: "Do you know which judge was assigned to his criminal

hearing scheduled for this Wednesday?"   Ms. Martinez responded: "Judge

Woodard handles the Wednesday afternoon docket."   Cynthia Martinez testified

that she found it "odd " that Cally Price was asking Ms. Martinez about the judge

that was assigned to the case. ECF No. 23 ¶¶ 288 - 290.

        After the case was filed, Mr. O'Rourke received regular, consistent updates

on the Mark Peterson prosecution. ECF No. 23 ¶¶ 316 - 322. When the case was

dismissed for lack of probable cause, Mr. O'Rourke demanded an explanation.

ECF No. 23 ¶¶ 354 – 357. On or about December 2, 2014, Cynthia Martinez

drafted a memo "explaining why we had decided to dismiss the charge against Mr.

Peterson." ECF No. 23 ¶¶ 354 – 357.   City Attorney Jeff Cutter asked Cynthia

Martinez to draft the memo because: "[Jeff Cutter] was going to have to explain to

Tony [O'Rourke] what had happened with the case.   [Tony O'Rourke] was

interested in the case. And he asked me if I would write the memo to help him."

ECF No. 23 ¶¶ 354 – 357. Cynthia Martinez testified that this was the only time

WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

City Attorney Jeff Cutter asked her to draft a memo to explain a specific case to Defendant Tony O'Rourke.  ECF No. 23 ¶¶ 354 – 357.

The documents and testimony demonstrate that Mr. O'Rourke was involved in and directed the prosecution of Mr. Peterson. Mr. O'Rourke, through his office and staff, fabricated and wrote memoranda, on fire department letterhead outlining how terrible the H&H Furniture situation was. ECF No. 23 ¶¶ 207 – 216. The iterations of the letter clearly show that Mr. O'Rourke and his staff are drafting a letter to make H&H Furniture's conduct seem egregious in order to give them cover in their politically motivated prosecution. ECF No. 23 ¶¶ 207 – 216.

The Testimony of Mr. O'Rourke's Personality: The evidence of Mr. O'Rourke's personal involvement is consistent with reputation.  Ms. Martinez testified that Mr. O'Rourke was known for being "volatile" in his opinions toward people who disagreed with him. ECF No. 23 ¶¶ 193. Mr. Hawkins testified that Mr. O'Rourke, in dealing with others, "would stretch the opinion and [get] political[.]" ECF No. 23 ¶¶ 33. Ms. Martinez testified that she was in senior staff meetings with Mr. O'Rourke and they would be talking about the Mark Peterson case. ECF No. 23 ¶¶ 284. Mr. O'Rourke would ask about the case and then follow up the question with comments about Mr. Peterson that were "not complimentary" (to use Ms. Martinez's politically correct term). ECF No. 23 ¶¶ 284.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 20



WK WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

The Admissions of Motivations: Mr. Soptich testified that his understanding of why Mr. O'Rourke was so involved in the prosecution of Mr. Peterson was over a dispute between the two of them.  When asked what the dispute was about, Mr. Soptich said: "**The Plaza**." It is admitted in the testimony that Mr. O'Rourke had a special interest in the case based on a dispute over The Plaza. ECF No. 23 ¶¶ 304.

The Involvement of City Officials: Mr. Peterson was charged with a municipal misdemeanor crime. The sheer number of senior City officials involved in the prosecution, is evidence that Mr. Peterson's prosecution was unusual.

The Comparators: Other business in Yakima engaged in more egregious conduct and no one else was charge with a crime. See ECF No. 267.

The Lack of Probable Cause:

It is undisputed that Mr. Peterson was charged without probable cause. ECF No. 23 ¶ 357.

## IV.   CONCLUSION

For the reasons set forth above, Mr. Peterson asks the Court to grant partial summary judgment as to his First Amendment Retaliation Claim, with damages to be reserved for trial.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 21



WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

Dated this 11th day of October, 2019.

WITHERSPOON · KELLEY

By:  *s/Matthew A. Mensik*

Matthew A. Mensik, WSBA #44260
Casey M. Bruner, WSBA # 50168
mam@witherspoonkelley.com
cmb@witherspoonkelley.com
422 W. Riverside Avenue, Suite 1100
Spokane, WA  99201-0300



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100     Phone: 509.**624.5265**
Spokane, Washington 99201-0300         Fax: 509.**458.2728**

CROTTY & SON LAW FIRM, PLLC


By: _Approved Matthew Z. Crotty_
Matthew Z. Crotty, WSBA #39284
matt@crottyandson.com
905 W. Riverside Ave, Suite 404
Spokane, WA 99201

*Counsel for Plaintiff Mark Peterson*



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100     Phone: 509.**624.5265**
Spokane, Washington 99201-0300     Fax: 509.**458.2728**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

<u>Attorneys for Defendants</u>:

Robert L. Christie
Salim Lewis
Christie Law Group, PLLC
2100 Westlake Avenue N., Suite 206
Seattle, WA  98109
*bob@christielawgroup.com*
*salim@christielawgroup.com*

<u>*s/ Matthew A. Mensik*</u>
Matthew A. Mensik
Witherspoon Kelley
422 W Riverside Ave, Ste 1100
Spokane, WA  99201
Email:  mam@witherspoonkelley.com

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 24



WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100      Phone: 509.**624.5265**
Spokane, Washington 99201-0300      Fax: 509.**458.2728**